IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-03346-SBP

M.M.C.,

    Plaintiff,

v.

MARTIN J. O'MALLEY,[1] Commissioner of Social Security,

    Defendant.

## OPINION AND ORDER

**Susan Prose, United States Magistrate Judge**

    This civil action is before the court pursuant to Title II, 42 U.S.C. §§ 401, *et. seq.*, and Title XVI, 42 U.S.C. § 1381, *et seq.,* of the Social Security Act (the "Act"), for review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff[2] M.M.C.'s applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). After consideration of the briefs and the administrative record, and for the reasons set forth in this order, the Commissioner's decision is AFFIRMED as follows.

## BACKGROUND

    Plaintiff seeks judicial review of the Commissioner's final decision denying her DIB and

---

[1] Martin J. O'Malley is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See* 42 U.S.C. § 405(g) (an action survives regardless of any change in the person occupying the office of the Commissioner of Social Security).

[2] This Opinion and Order identifies Plaintiff by initials only per D.C.COLO.LAPR 5.2(b).

SSI applications filed on August 13, 2019. Plaintiff's claims were denied initially on September 29, 2020, and upon reconsideration on March 2, 2021. ECF No. 10-2 at 16.[3] An Administrative Law Judge ("ALJ") held an evidentiary hearing on March 8, 2022, *id*. at 37-72, during which Plaintiff amended her disability onset date to June 20, 2019. *Id.* at 16. The ALJ thereafter issued a ruling on May 31, 2022, denying Plaintiff's DIB and SSI applications. *Id*. at 16-29. The SSA Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's decision, rendering it final on October 31, 2022. *Id.* at 8-13. Plaintiff timely filed her complaint with this court seeking review of the Commissioner's final decision. EFC No. 1. All parties consented to the jurisdiction of a magistrate judge, ECF No. 11, and jurisdiction is proper pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).

## FACTUAL BACKGROUND

Plaintiff was a few days shy of 48 years old on her amended disability onset date (June 20, 2019), and she was 51 years old on the date of the ALJ's decision (May 31, 2022). ECF No. 10-2 at 27 (noting Plaintiff's birthday in 1971). She completed high school. *Id*. Plaintiff asserted that she was disabled due to several mental and physical impairments. As relevant here, she alleged physical impairments of carpal tunnel syndrome; left cubital tunnel syndrome; mild hand arthritis; degenerative disc disease of the spine; obesity; peripheral neuropathy; fibromyalgia;[4]

---

[3] When citing to the Administrative Record, the court utilizes the docket number assigned by the court's Case Management/Electronic Case Files ("CM/ECF") system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page. For all other documents, the court cites to the document and page number generated by the CM/ECF system.

[4] Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months. FM is a common syndrome." Social Security Ruling 12-2p, 2012 WL 3104869, at *2 (July 25, 2012) ("SSR 12-2p") (footnote omitted). For ease of reference, when referring to this publication, the

2

and chronic obstructive pulmonary disease ("COPD"). *Id*. at 19.

## ALJ's DECISION

In her final decision, the ALJ applied the five-step sequential process for determining whether an individual is disabled outlined in 20 C.F.R. § 404.1520(a) and § 416.920(a).[5] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date. ECF No. 10-2 at 19. At step two, the ALJ found that Plaintiff had severe impairments as relevant here of carpal tunnel syndrome; left cubital tunnel syndrome; mild hand arthritis; degenerative disc disease of the spine; obesity; peripheral neuropathy; fibromyalgia; and COPD. *Id*. The ALJ concluded that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in the

---

court uses the Westlaw pagination.

[5] "The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

> 1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
> 2. The ALJ must then determine whether the claimed impairment is 'severe.' A 'severe impairment' must significantly limit the claimant's physical or mental ability to do basic work activities.
> 3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.
> 4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.
> 5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity."

*Wilson v. Astrue*, No. 10-cv-00675-REB, 2011 WL 97234, at *2 (D. Colo. Jan. 12, 2011); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (setting forth five-step sequential evaluation process).

disability regulations deemed to be so severe as to preclude substantial gainful employment at step three. *Id*. at 19-22.

The ALJ next determined that Plaintiff had the residual functional capacity (the "RFC") to perform a reduced range of "light" work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b),[6] with the following physical limitations:

> The claimant can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. The claimant can stand and/or walk for 4 hours in an 8-hour workday. She can sit for 6 hours in an 8-hour workday. The claimant should not work on ladders, ropes, or scaffolds. The claimant can frequently climb ramps and stairs. She can occasionally stoop. She can frequently finger with the right upper extremity. She should not work on unprotected heights or around fast-moving machinery. She should have no more than very brief, incidental exposure to fumes, odors, dusts, or gases.

*Id.* at 22. The ALJ then analyzed the medical evidence in the record, including the medical source opinions, in support of finding this RFC. *Id*. at 22-27.

At step four, the ALJ found that Plaintiff had no past relevant work. *Id.* at 27. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff was capable of performing, such as, router, office helper, and collator. *Id.* at 27-28. The ALJ therefore concluded at step five that Plaintiff was not disabled, as defined by the Social Security Act, from her amended onset

---

[6] The regulations define "light work" as that which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

date of June 20, 2019, through the date of the ALJ's decision on May 31, 2022. *Id*. at 29.

## STANDARD OF REVIEW

In reviewing the final decision, this court "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014). "The phrase 'substantial evidence' is a 'term of art,' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting *T-Mobile South, LLC v. City of Roswell*, 574 U.S. 293, 301 (2015)). In applying the substantial-evidence standard,

> a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—**such relevant evidence as a reasonable mind might accept as adequate to support a conclusion**.

*Id.* at 102-03 (cleaned up, emphasis added); *see also Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) ("Substantial evidence requires more than a scintilla but less than a preponderance.") (quoting *U.S. Cellular Tel., L.L.C., v. City of Broken Arrow*, 340 F.3d 1122, 1133 (10th Cir. 2003)). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Zoltanski*, 372 F.3d at 1200 (quoting *U.S. Cellular*, 340 F.3d at 1133). This court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Knight*, 756 F.3d at 1175 (citation omitted); *see also Zoltanski*, 372 F.3d at 1200 (explaining that the court may not "displace the Commissioner's choice between two fairly conflicting views").

## ANALYSIS

On appeal, Plaintiff asserts one claim of error: that the ALJ erred by improperly analyzing the medical opinions when determining her physical limitations on her ability to work. Specifically, Plaintiff argues that the ALJ erred in finding persuasive the opinion of the State agency medical consultant on reconsideration, Paul Barrett, Jr., M.D.—which found Plaintiff able to do a reduced range of light work—instead of the opinions that were more favorable to Plaintiff. Plaintiff points to the October 26, 2021 opinion of her treating physician Laura Strickland, M.D. (ECF No. 10-11 at 1832-37, Ex. D19F); the July 31, 2020 opinion of the consultative examiner, Stephen Creer, M.D. (ECF No. 10-8 at 1414-20, Ex. D10F), and the September 28, 2020 opinion of the State agency medical consultant on initial review, Walter Bell, M.D. ECF No. 10-3 at 188-203 (Ex. D6A). *See* ECF No. 12 ("Opening Brief") at 13-24.

In assessing the medical opinion evidence, the ALJ first summarized Plaintiff's testimony, Plaintiff's reports of activities of daily living ("ADLs"), and numerous treatment records relating to Plaintiff's physical impairments. ECF No. 10-2 at 23-24. The ALJ then addressed the medical opinions, in chronological order.

The ALJ began with the opinion of Dr. Creer, the Commissioner's consultative medical examiner:

> On July 31, 2020, Stephen Creer, M.D., performed a consultative physical examination (D10F). Dr. Creer reported that the claimant had 18 of 18 positive trigger points, that she had obvious tenderness and decreased range of motion in the back and that she walked slowly and favored her left leg (pp. 5-6). The claimant also had some lower extremity swelling and decreased sensation to light touch in the lower legs and the right hand (p. 6). The claimant retained normal "5/5" strength in the deltoids, biceps, quads, and hamstrings, and had "+4" strength in the right and left triceps and hand grips (p. 6). The claimant had good finger to nose and rapid hand coordination (p. 6). Dr. Creer did report, though, that the claimant had difficulty using buttons (p. 7). Dr. Creer concluded that the

6

> claimant can lift and carry less than 10 pounds (p. 7). Dr. Creer found the claimant to be limited to sitting 4 hours in an 8-hour workday and limited to standing and walking 4 hours in an 8-hour workday (p. 7). Dr. Creer stated that the claimant "can bend, stoop and crouch, but this is very difficult for her" (p. 7). Dr. Creer limited the claimant to frequent grasping and fingering due to carpal tunnel syndrome (p. 7). Dr. Creer noted that the claimant "ambulates stairs sideways one leg at a time holding onto the rail" (p. 7).

ECF No. 10-2 at 24.

Next, the ALJ summarized the opinion of Dr. Bell:

> On September 28, 2020, State agency medical consultant Walter Bell, M.D., reviewed the evidence of record and evaluated the claimant's physical RFC (D6A, pp. 10-12). Dr. Bell found the claimant to be limited to a sedentary exertional range of work, lifting 10 pounds occasionally and less than 10 pounds frequently, sitting about 6 hours in an 8-hour workday, and standing and/or walking 2 out of 8 hours (p. 10). Dr. Bell indicated that the claimant could never climb ladders, ropes, or scaffolds (p. 11). Stooping was limited to occasional, but no other postural limits were endorsed (p. 11). Dr. Bell did not find any manipulative limits (p. 11). Dr. Bell recommended avoiding concentrated exposure to fumes, odors, dusts, gases, or poor ventilation, but did not report any other environmental limitations (p. 11).

*Id*. at 24-25.

The ALJ next summarized the opinion of Dr. Barrett:

> On February 26, 2021, State agency medical consultant Paul Barrett, Jr., M.D., reviewed the record and performed an updated physical RFC evaluation (D12A). Dr. Barrett found the claimant able to perform a range of light exertional level work (pp. 17-26). Specifically, Dr. Barrett found that the claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently, that she could stand and/or walk for 4 hours in an 8-hour day, and that she could sit for more than 6 hours in an 8-hour day (p. 17). Dr. Barrett indicated that the claimant could never climb ladders, ropes, or scaffolds and that she could occasionally stoop (pp. 17-18). No other postural limits were endorsed (pp. 17-18). Dr. Barrett endorsed limitation to frequent fingering with the right upper extremity due to carpal tunnel syndrome (p. 19). Dr. Barrett indicated that the claimant should avoid concentrated exposure to fumes, odors, dusts, gases, and poor

> ventilation (p. 20). Dr. Barrett also recommended avoiding even moderate exposure to hazards such as machinery and heights (p. 20).

*Id*. at 25. The ALJ then stated why she found Dr. Barrett's opinion more persuasive than Dr. Creer's and Dr. Bell's:

> The undersigned finds the opinion evidence from Dr. Barrett more persuasive than the exam report from Dr. Creer or the evaluation from Dr. Bell. Dr. Barrett's assessment was performed months after Dr. Creer's exam and Dr. Bell's evaluation, allowing Dr. Barrett to review updated evidence. Dr. Barrett provided a detailed assessment citing to often mild physical exam findings supporting his conclusions.
>
> Further, **while Dr. Creer's assessment and Dr. Bell's opinion could be said to be at least partially supported by his exam findings of widespread tenderness, a slowed gait, and difficulty manipulating buttons, other aspects do not support some of the limitations endorsed. For example, the largely normal strength findings do not support the limitation to lifting and carrying no more than 10 pounds. Further, durational consideration is given; while the claimant might have experienced a period of reduced ability, the evidence supports improvement. As a result, Dr. Barrett's assessment is more consistent with the record as a whole.**
>
> As noted above, the claimant's physical exams in treatment records show some deficits but also generally show normal strength findings, intact coordination, normal range of motion, and a normal gait. The claimant also had improvement in hand symptoms after a carpal tunnel operation. This evidence is more consistent with an ability to perform a range of light exertional level work with some limitations as outlined by Dr. Barrett than with the more significant limitations outlined by Dr. Creer and Dr. Bell.

*Id*. at 25 (emphasis and paragraph breaks added).

And lastly, the ALJ addressed Dr. Strickland's opinion and why she found it unpersuasive:

> The record also contains a physical RFC evaluation form from Laura Strickland, M.D. (D19F). Dr. Strickland suggested that the claimant could not perform even sedentary work activity on a fulltime basis, reporting limitations including inability to sit even 2 hours in an 8-hour workday, inability to stand and/or walk even 2 hours in an 8-hour workday, inability to lift any weight at all, inability to

> use her hands for more than 10 percent of the workday, and a need to be absent from work more than four days per month (pp. 4-5). In support of her findings, Dr. Strickland cited "multiple tender points, occ[asional] wheezing, [and] decreased sensation (p. 2).
> **This opinion is not persuasive. Dr. Strickland's assessment is not consistent with the evidence of record.** The suggestion that the claimant cannot lift any weight at all is markedly inconsistent with a record of numerous objective exams demonstrating normal strength findings. Similarly, the evidence often shows a normal gait, and while there is evidence of some shortness of breath with exertion this more consistent with an accommodation limiting the claimant to 4 hours of standing and walking as outlined by Dr. Barrett than then more extreme restrictions and indicated by Dr. Strickland. The severe limits in sitting suggested by Dr. Strickland are not at all consistent with the record showing minimal findings of degenerative changes in the back and unremarkable hip imaging. The extreme limits in hand use are also inconsistent with a record showing a history of carpal tunnel and cubital tunnel problems, but improvement with surgery and a lack of treatment record findings of severe coordination or grip strength deficits.

*Id*. at 25-26 (paragraph break and emphasis added).

Plaintiff argues that the ALJ erred in finding Dr. Barrett's opinion more persuasive than the opinions of Dr. Creer, Dr. Bell, and Dr. Strickland. For the reasons that follow, the court respectfully disagrees.

For claims filed on or after March 27, 2017—as is the case here because Plaintiff filed her applications in August of 2019—the ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions or prior administrative medical findings, including those from a claimant's own medical sources. 20 C.F.R. §§ 404.1520c, 416.920c.[7] Instead, under the applicable regulations, the ALJ will consider the persuasiveness of

---

[7] By contrast, "for claims filed *before* March 27, 2017, the Commissioner 'gives more weight to medical opinions from claimants' treating sources." *S.L. v. Comm'r*, No. 20-cv-01953-RMR, 2022 WL 897104, at *8 (D. Colo. Mar. 28, 2022) (cleaned up) (citing 20 C.F.R. § 404.1527(c)(2)).

9

each medical source opinion using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of treatment relationship, the frequency of examinations, the purpose and extent of the treatment relationship, and the examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c)(1)-(c)(5), 416.920c(c)(1)-(c)(5). The most important factors in evaluating persuasiveness are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Miles v. Saul*, No. 20-cv-1456-WJM, 2021 WL 3076846, at *2-3 (D. Colo. July 21, 2021).

For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Thus, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Miles*, 2021 WL 3076846, at *2 (quoting *Vellone v. Saul*, No. 20-cv-00261(RA)(KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Vellone on behalf of Vellone v. Saul*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)); *see also Lenoble v. Kijakazi*, No. 22-cv-00094-MEH, 2022 WL 16855693, at *7 (D. Colo. Nov. 10, 2022) ("supportability" is the extent to which the medical source supports his or her opinion with objective medical evidence and an explanation).

Consistency, on the other hand, means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior

10

administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). Consistency thus "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Miles*, 2021 WL 3076846, at *2-3 (citing 20 C.F.R. §§ 416.920c(c)(2), 404.1520c(c)(2)); *see also Lenoble*, 2022 WL 16855693, at *7 ("consistency" is the extent to which the evidence from the other medical and nonmedical sources is consistent with the opinion).

The ALJ must explain his or her approach with respect to the supportability and consistency factors when considering a medical opinion: "we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record." *Id*. The ALJ is not required to expound on the remaining three factors unless two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. *Miles*, 2021 WL 3076846, at *3 (citing §§ 416.920c(b)(2)-(3), 404.1520c(b)(2)-(3)).

The court reviews the ALJ's evaluation of the medical sources' opinions to ascertain whether the ALJ applied the correct legal standards and whether "substantial evidence supports the ALJ's decision" to find those opinions persuasive or unpersuasive, as the case may be. *Johnston v. Kijakazi*, No. 20-cv-01366-PAB, 2022 WL 1439112, at *5 (D. Colo. May 6, 2022) (reviewing ALJ decision that found some opinions of a medical source to be persuasive, and others unpersuasive). *See also L.A.M. v. Kijakazi*, No. 21-cv-00983-NYW, 2022 WL 3139031, at

11

\*11-12 (D. Colo. Aug. 4, 2022) (reviewing ALJ's findings that two medical sources' opinions were unpersuasive and finding no reversible error because the findings were "supported by substantial evidence"). Additionally, so long as the court can "trace the path of the adjudicator's reasoning," the ALJ has met the articulation requirements. *Nielsen v. Comm'r, SSA,* No. 21-4136, 2022 WL 15570650, at \*5 (10th Cir. Oct. 28, 2022)[8] (quoting *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017)).

Here, the ALJ applied the correct legal standards. The ALJ states that she considered the medical opinions and prior administrative medical findings in accordance with the requirements of 20 C.F.R. § 404.1520c and § 416.920c. ECF No. 10-2 at 22. The ALJ specified that she found Dr. Barrett's opinion more persuasive than the three other doctors' opinions because Dr. Barrett's opinion was supported by his "detailed assessment citing to often mild physical exam findings" in the "updated evidence" that was available in the record on reconsideration. *Id*. at 25. The ALJ contrasted that with the lack of supportability she found in Dr. Creer's, Dr. Bell's, and Dr. Strickland's respective opinions. *Id*. at 25-26. She also found Dr. Barrett's opinion more persuasive because it was "more consistent with the record as a whole" than the other doctors' opinions were, for the reasons she stated. *Id*. Accordingly, the ALJ applied the correct legal standards of the regulations that govern how the ALJ assesses medical source opinions. *See*

---

[8] While an unpublished opinion, this court sees no reason to disagree with the analysis in this case and finds it persuasive. The court can rely on an unpublished Tenth Circuit opinion to the extent that its reasoned analysis is persuasive in the case before it. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005) ("In this circuit, unpublished orders are not binding precedent and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.") (cleaned up); *see also* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

*Miles*, 2021 WL 3076846, at *3; *see also P.T. v. Comm'r of Soc. Sec.,* No. 22-cv-02926-STV, 2023 WL 8108569, at *8 (D. Colo. Nov. 17, 2023) (ruling that the court was able to "follow the [ALJ's] reasoning in conducting [its] review [of the ALJ's analysis of a medical opinion], and can determine that correct legal standards have been applied") (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012)).

The ALJ's findings are also supported by substantial evidence. As noted above, the ALJ expressly articulated why she found Dr. Barrett's opinion—which found Plaintiff less restricted in her ability to work than the other doctors found—was both better supported by Dr. Barrett's examination and more consistent with the overall objective evidence than the opinions of the other doctors. *Id*. at 25-26. The ALJ noted that Dr. Barrett had the benefit of reviewing an updated record of medical evidence (compared to Dr. Creer and Dr. Bell), conducted an updated physical RFC evaluation (Ex. D12A), and unlike Dr. Strickland—who was Plaintiff's treating physician—was not limited in his review to only the Plaintiff's treatment history with Dr. Strickland. In rejecting Dr. Creer's, Dr. Bell's and Dr. Strickland's opinions, the ALJ pointed to multiple records reflecting objective medical findings of mild conditions and improvement of Plaintiff's hand/wrist condition after surgery. *Id*. at 23-24 (citing, e.g., treatment records from February 26, 2018 through January 4, 2022: Exhibits D3F, p. 155; D7F, pp. 9, 11-12, 20, 31, 36-37, 40-41; D11F; D12F, pp. 1-2; D14F, pp. 15, 19-20, 30, 33, 39, 48, 51, 54, 59-63, 82; D15F, pp. 11, 19, 24, 34, 37, 43, 52, 55, 58; D18F, pp. 11, 29; D21F, pp. 2-4, 6-11; D23F, pp. 8, 19).[9]

---

[9] The cited records are included in the Administrative Record, ECF No. 10-7 through 10-11. While not all of these record citations pertain to impairments that are the subject of Plaintiff's appeal, they all nonetheless provide substantial evidence to support the ALJ's finding that the opinions of Dr. Creer, Dr. Bell, and Dr. Strickland—that greater restrictions for Plaintiff are necessary—are not as consistent with the record as Dr. Barrett's opinion that lesser restrictions

Plaintiff argues that the ALJ was impermissibly selective in choosing only the portions of the evidence that supported her conclusion, and ignored the rest of the evidence. But the ALJ did not have to cite every page of evidence that pertains to Plaintiff's physical functioning and limitations. While the medical records overall may contain conflicting evidence about the extent to which Plaintiff suffered more pronounced physical functioning impairments than reflected in Plaintiff's RFC, this court is obliged to confine its review to the question of whether *the evidence on which the ALJ relied* was such "evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103. Here, the court concludes that it was. The court has reviewed the Administrative Record and finds that the ALJ did not engage in "impermissible cherry-picking," *see, e.g.*, *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018), of the medical records. The ALJ instead reasonably resolved the conflicting evidence and explained her reasoning.

Plaintiff also argues that the ALJ impermissibly relied on objective evidence with respect to Plaintiff's fibromyalgia. Plaintiff cites cases discussing that this condition is, by its nature, subjective. Opening Brief at 16-17, ECF No. 16 ("Reply Brief") at 2 (both citing *Gilbert v. Astrue*, 231 F. App'x 778, 783 (10th Cir. 2007); *Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996)). But as the Commissioner points out, the Tenth Circuit has found no error in the

---

are appropriate.

      For instance, Plaintiff does not challenge the ALJ's findings relating to Plaintiff's pulmonary and breathing conditions. While Dr. Strickland's opinion mentions Plaintiff's "shortness of breath," wheezing, and "COPD exacerbation" among the reasons that Dr. Strickland would find greater functional restrictions, ECF No. 10-11 at 1832-34, the ALJ notes that Plaintiff's "latest respiratory exams in the record show the claimant's lungs to be clear to auscultation with good air movement and no wheezes despite ongoing cigarette and marijuana smoking (D23F, p. 8)." ECF No. 10-2 at 24 (citing ECF No. 10-11 at 1983, a treatment record dated November 12, 2021).

Commissioner's reliance on objective evidence in determining the work limitations that a claimant experienced from her fibromyalgia impairment. ECF No. 15 ("Response Brief") at 1, 14 (citing *Tarpley v. Colvin*, 601 F. App'x 641, 643 (10th Cir. 2015)). "[A]lthough the existence or severity of fibromyalgia may not be determinable by objective medical tests, this court has suggested that the physical limitations imposed by the condition's symptoms can be objectively analyzed." *Tarpley*, 601 F. App'x at 643. In *Tarpley*, the court found no error where the ALJ looked to the objective medical evidence to determine the claimant's limitations from fibromyalgia, and found the claimant was less restricted than two physicians had opined. *Id*. at 643.

Much as in *Tarpley*, the ALJ in this case cited several objective medical records and findings—including from Dr. Creer's exam—showing that although Plaintiff had tenderness and decreased range of motion in her back, walked slowly, and had some lower extremity swelling, she also "retained normal '5/5' strength in the deltoids, biceps, quads, and hamstrings, and had '+4' strength in the right and left triceps and hand grips." ECF No. 10-2 at 24. In addition:

> Despite the claimant's complaints of widespread pain and diagnosis of fibromyalgia, her physical exams have largely shown mild findings, with tenderness and some intermittent findings of leg swelling, but normal "5/5" motor strength, intact coordination, normal range of motion, and a normal gait (D7F, p. 11; D14F, pp. 15, 30, 33, 39, 48, 51, 54; D15F, pp. 11, 19, 34, 43, 52, 55, 58; D18F, pp. 11, 29; D23F, pp. 8, 19). Despite hip and back complaints, hip imaging has been "unremarkable" and lumbar spine imaging showed only mild degenerative disc disease (D3F, p. 155; D12F, p. 2). Cervical spine imaging has also shown mild degenerative changes without high-grade central canal stenosis or neural foraminal narrowing (D14F, pp. 59-63, 82).

*Id*. at 23.

In addition, the cases on which Plaintiff relies predate SSR 12-2p. This Social Security

15

Ruling governs how the ALJ is to "evaluate fibromyalgia in disability claims." 2012 WL 3104869, at *1. Under SSR 12-2p, the ALJ cannot find fibromyalgia is a medically determinable impairment ("MDI") solely on the basis of a doctor's diagnosis; the ALJ must consider whether the doctor examined the claimant and made objective findings, or whether the record overall reflects objective criteria. 2012 WL 3104869, at *2-3. After an MDI is established,

> [w]e then evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work. **If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record**, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms. As we explain in SSR 96-7p, we will make a finding about the credibility of the person's statements regarding the effects of his or her symptoms on functioning. We will make every reasonable effort to obtain available information that could help us assess the credibility of the person's statements.

*Id*. at *5 (Section IV.B, emphasis added). Here, the ALJ did as SSR 12-2p requires: she looked at the objective medical evidence, and not finding substantiation of Plaintiff's complaints of symptoms, looked at all of the evidence in the record. ECF No. 10-2 at 23, 27 (reciting that the ALJ considered the claimant's activities of daily living, previous work activity, medical records, the medical opinions, and Plaintiff's subjective complaints and hearing testimony). The ALJ's finding that Plaintiff was less restricted than Dr. Creer, Dr. Bell, and Dr. Strickland opined was supported by this substantial evidence, and therefore the ALJ did not err.

Plaintiff also takes issue with the ALJ's articulation because the ALJ did not specify why she found *each* specific opinion (or, more accurately, sub-opinions) of Dr. Creer, Dr. Bell, and Dr. Strickland unpersuasive. But the ALJ was not required to specifically address the

16

supportability or consistency of each of the doctors' opinions:

> [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

20 C.F.R. § 404.1520c(b)(1). Importantly, the court is able to follow the ALJ's reasoning with respect to each of the doctors' opinions. And to the extent Plaintiff argues the ALJ had to specifically compare the multiple medical opinions (Reply at 3), the ALJ did so expressly in this case. ECF No. 10-2 at 25-26.

In sum, because substantial evidence supports the ALJ's finding that Dr. Barrett's opinion was more persuasive than the opinions of Dr. Creer, Dr. Bell, and Dr. Strickland, the court finds no reversible error.

## CONCLUSION

For the reasons set forth above, it is ORDERED that the decision of the Commissioner is AFFIRMED. Judgment shall enter accordingly.

Dated: September 26, 2024.                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge